WENDY J. OLSON, IDAHO STATE BAR NO. 7634
UNITED STATES ATTORNEY
JUSTIN D. WHATCOTT, IDAHO STATE BAR NO. 6444
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
800 E. PARK BOULEVARD, SUITE 600
BOISE, IDAHO   83712-7788
TELEPHONE:   (208) 334-1049
FACSIMILE:   (208) 334-1413

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| vs. | ) | **RULE 11 PLEA AGREEMENT** |
| | ) | |
| KENTON LLOYD FLOOK, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## I.   GUILTY PLEA

**A.   <u>Summary of Terms</u>.**   Pursuant to Federal Rule of Criminal Procedure 11(c)(1)

(A) and (B), the defendant, the attorney for the defendant and the Government[1] agree that the

defendant will waive his right to indictment and plead guilty to an Information, which charges

the defendant with two counts of Transfer of Obscene Material to Minors, in violation of 18

U.S.C. § 1470.   The defendant and the Government both agree that the appropriate disposition

of the case is a sentence of 84 months incarceration.

---

[1] The word "Government" in this Agreement refers to the United States Attorney for the
District of Idaho.

**Forfeiture Allegation**:   In connection with the violations set out above, the defendant agrees to forfeiture of the property mentioned in the forfeiture allegation of the Information, pursuant to 18 U.S.C. § 1467.

This plea is voluntary and did not result from force, threats, or promises, other than any promise made in this Plea Agreement.   Upon acceptance of the defendant's guilty plea, and the defendant's full compliance with the other terms of this Agreement, the Government, under Federal Rule of Criminal Procedure 11(c)(1)(B), agrees that a sentence of 84 months incarceration is the appropriate disposition of the case. The defendant agrees that this is the appropriate disposition of the case. See subsection V(3) below.

**B.**     **Oath**.     The defendant will be placed under oath at the plea hearing.   The Government may use any statement that the defendant makes under oath against the defendant in a prosecution for perjury or false statement.

## II.     WAIVER OF CONSTITUTIONAL RIGHTS AT TRIAL

The defendant understands that by pleading guilty, the Defendant waives the following rights: 1) the right to plead not guilty to the offense charged against the defendant and to persist in that plea; 2) the right to a trial by jury, at which the defendant would be presumed innocent and the burden would be on the Government to prove the defendant's guilt beyond a reasonable doubt; 3) the right to have the jury agree unanimously that the defendant was guilty of the offense; 4) the right, at trial, to confront and cross-examine adverse witnesses; 5) the right to present evidence and to compel the attendance of witnesses; and 6) the right not to testify or present evidence without having that held against the defendant.   If the District Court accepts the defendant's guilty plea, there will be no trial.

### III.   NATURE OF THE CHARGES

**A.   Elements of the Crime.**   The elements of the crime of Transfer of Obscene Material to Minors in violation of 18 U.S.C. § 1470, as charged in Counts One and Two of the Information are:

1.   That the defendant knowingly used the mail or any means or facility of interstate commerce to transfer obscene material.

2.   That the defendant knew that he was transferring the matter to an individual less than 16 years old.

3.   That the defendant knew at the time of the transfer the general nature of the contents of the matter.

4.   The matter is obscene.

**B.   Factual Basis.**   If this matter were to proceed to trial, the Government and the defendant agree that the following facts would be proven beyond a reasonable doubt:

On March 7, 2014, Special Agent (SA) Jason Crouse of the Federal Bureau of Investigation, Erie, Pennsylvania Resident Agency and Detective Chris Janus of the Erie Police Department (EPD) received information from D.C., the mother of a 13-year-old female, born in April 2000.   D.C., who lived in Erie, Pennsylvania with her daughter, had contacted EPD with a complaint involving her 13-year-old female daughter engaging in sexually explicit activity with an adult male via the Internet.

D.C., revealed to the investigators that her daughter, hereinafter referred to as "the Victim", was primarily using KiK messaging to communicate with an individual representing himself as "Kevin Atton."   During these communications, the Victim and "Atton" exchanged sexually explicit images of themselves.   The Victim and "Atton" would also communicate via

Skype. The Victim told her mother that she was in love with "Atton", that he lives in Las Vegas, and that his mother's name is "Mary Atton".

D.C. provided the Apple iPod touch used by the Victim to investigators.   Detective Janus and SA Crouse conducted a preliminary review of the contents of the iPod on March 7, 2014. D.C. also provided the Victim's KiK account password to SA Crouse.

The examination of the Victim's iPod by Detective Janus and SA Crouse revealed multiple sexually explicit images of the Victim, and sexually explicit images of an adult male whom the the Victim knew as "Kevin Atton". The investigators also located on the Victim's iPhone a KiK contact for "Kevin Atton," (vadaboy1995), a Skype contact "Kevin Atton1," and a SnapChat contact "kevinatton1."   Detective Janus and SA Crouse also observed several sexually explicit images and writings sent between "Kevin Atton" and the Victim located in the KiK messages.

On March 14, 2014, SA Crouse and Detective Janus interviewed the Victim in the presence of and with the consent of her mother, D.C.   The Victim provided the following information:

Beginning on approximately January 21, 2014, the Victim began contact with an individual using the name "Kevin Atton," who was utilizing the on-line chat website Omegle. Eventually the contact moved from Omegle to KiK messaging, where the Victim and "Atton" continued to communicate daily and often.   "Atton's" username on KiK was "vadaboy1995". The Victim stated that she told "Atton" she was 14 years old when they first had contact on Omegle, and was certain that she continued to convey that throughout their communications. "Atton" represented to the Victim that he was 21 years old when they first had contact and maintained that at all times.

Beginning approximately the week after Valentine's Day 2014, the KiK communications between the Victim and "Atton" became sexually explicit in nature.   The Victim and "Atton" also

exchanged sexually explicit photos of one another.   Also during this period, the Victim and "Atton" communicated via Skype.   During the Skype sessions involving live voice/video, the Victim and "Atton" would talk sexually and perform sexual acts on video for each other, to include joint masturbation.   "Atton's" username on Skype was "kevinatton1."

During the course of the Victim's conversations with "Atton," he represented himself as a 21-year-old baseball player and student at UNLV, who lived with his mother "Mary B. Atton" in Las Vegas, Nevada.   "Atton" told the Victim that his birthday was January 18, that he did not have children, and had two brothers and a sister who reside with their father in Irvine, California. "Atton" had an iPad in a green cover, which had a fleur-de-lis on the outside.   "Atton" claimed he did not have a phone and utilized other people's phones.   "Atton" claimed he was using his mother's phone during the first three weeks of communicating with the Victim until he supposedly dropped it into the toilet and it broke.   "Atton" also claimed he had wrecked his BMW and that his father had his own airplane.   "Atton" told the Victim that he had 10 firearms.

"Atton" never provided the Victim his full address, and she never provided her full address to him.   However, the Victim did reveal that "Atton" planned to meet her on her birthday in Erie, Pennsylvania.   "Atton" told the Victim he was going to fly to Erie in his father's plane to hang out and take her shopping at the mall. "Atton" also told the Victim they could go to his hotel room and have sex.

The last contact between "Atton" and the Victim occurred on March 7, 2014.   The Victim utilized a friend's iPod and her Kik account to contact "Atton" at "vadaboy1995".   The Victim told "Atton" that her mother had caught the Victim and "Atton", that they could not talk anymore, and that "Atton" should get an attorney because the Victim's mother had gotten the "pros" involved.   "Atton" inquired who the "pros" were and the Victim told him he could figure it out.

"Atton" reassured the Victim that they would get through this.   "Atton" said that he had to go and would contact her on a new account he set up.   On July 8, 2014, SA Crouse spoke with the Victim who reported that she had not heard from "Atton" since their last contact on March 7, 2014.

A review of the contents of the Victim's iPod by SA Crouse revealed the presence of multiple penis images. The Victim stated that every image of a penis on her iPod was sent from "Atton," but they all may not have been of "Atton's" penis.   For example, there were adult looking pornographic images on the iPod that may have come from the Internet. The Victim denied sending or receiving sexually explicit images to or from any other males besides "Atton."

SA Crouse reviewed with the Victim some of the images contained on her iPod.   Among the images reviewed were seven images that the Victim confirmed depicted "Atton."   One of these images was a Skype frame capture that contained the image of Victim and "Atton" on the same screen.   Another image Victim identified as depicting "Atton" showed "Atton's" face and his exposed penis.   SA Crouse also viewed an image of "Atton" holding what appeared to be an iPad in a green case that has a fleur-de-lis on the case.   Other images showed "Atton" holding what appears to be an iPhone or similar smart-phone.   SA Crouse also viewed images of a male exposing his penis.   The attire depicted in some of these images was similar to the attire worn by "Atton" in images where his face was visible.   It is apparent from the examination of the Victim's iPod that "Atton" sent multiple images of his penis to the Victim via the Internet in March 2014. Specifically, the examination of the Victim's iPod revealed that "Atton", subsequently identified as Kenton Lloyd Flook, utilized the Internet to send the Victim images of his penis on multiple occasions in March 2014, including on March 2, 2014 and March 3, 2014.

Records were obtained from Skype, via a FBI administrative subpoena, for Skype account "Kevinatton1."   Pursuant to the subpoena, Skype provided details regarding the account creation,

among them: creation date of February 4, 2014, utilizing IP address 24.116.177.6 from the United States, and listing a current e-mail address of kent@sertamattress.com.

An FBI administrative subpoena requesting subscriber information for IP address 24.116.177.6 was sent to Cable One in Phoenix, Arizona.   Cable One responded to the administrative subpoena by providing the subscriber information for IP address 24.116.177.6 as: Holiday Inn Express, 2270 Channing Way, Idaho Falls, Idaho 83404.   This IP address was part of a hotel business account of 13 IP addresses, for which no further subscriber information was available.

On June 26, 2014, SA Jeff Ross of the FBI Salt Lake City Division spoke with a vice president of Serta Mattress in Salt Lake City, Utah.   The vice president informed SA Ross that the e-mail address kent@sertamattress.com was utilized by Kent Flook, who is employed as a regional sales representative covering the states of Nevada and Idaho.   The vice president also provided a home address for Flook in Boise, Idaho.   SA Crouse obtained an Idaho driver's license photo and biographical information for Kenton Lloyd Flook residing in Boise, Idaho.

SA Crouse compared Flook's Idaho driver's license photo with numerous images of "Atton" contained on Victim's iPod and determined they were the same individual.

On July 22, 2014, SA David Bodily, FBI, Pocatello Resident Agency went to the Holiday Inn Express located at 2270 Channing Way, Idaho Falls, Idaho and was able to review the guests that were registered there on February 4, 2014.    Kenton Flook was a registered guest at the Holiday Inn Express in Idaho Falls, Idaho from February 3, 2014 to February 7, 2014.

Kenton Flook was interviewed by the FBI on July 28, 2014, while in Las Vegas on a business trip.   Flook was informed that a federal search warrant had been served at his residence in Boise, Idaho that morning relative to Internet communications he had engaged in with a minor

female in Pennsylvania.   Flook readily acknowledged that he had repeatedly communicated with the Victim in Erie, Pennsylvania.   He revealed that he met the Victim online utilizing Omegle, an online chat service and that their communications then moved to KIK and Skype.   Flook was shown a series of photographs taken from the Victim's iPhone.   Flook admitted he was the male depicted in the photos, several of which depicted him exposing his penis.   Flook admitted that he and the Victim had exchanged photos of each other both clothed and naked.   Flook stated that he used his iPhone and iPad to communicate and exchange photos with the Victim.

Flook stated that he enjoyed communicating with the Victim because they often talked in graphic language about sex.   Flook admitted that he and the Victim would discuss and engage in mutual masturbation while on Skype.   Flook claimed that he thought the Victim was 18.   When she informed Flook in mid-March 2014 that she was only 14, their communications ceased. Flook revealed that he had deleted any images of the Victim that were on his iPhone or iPad. Flook did admit that on one occasion the Victim told him she was 17 but when he questioned her, the Victim said she was just kidding and was about to turn 18.

When questioned about why he lied to the Victim about his age and background, Flook claimed that he thought the Victim would be more comfortable talking with someone closer to her own age.   Flook admitted that he told the Victim he was 21 and lived in Las Vegas.   He also admitted that his Skype user name was "vadaboy" with numbers following.   Flook also acknowledged telling the Victim he attended UNLV where he played baseball.

The parties stipulate that in the context of an adult stranger using a false identity as a much younger person sending these sexually explicit images to a minor female, accompanied by contemporaneous sexually explicit chats directed at the minor, these images are obscene.   In this context, the images, 1) appeal predominantly to prurient interest in sex; 2) depict sexual conduct in

a patently offensive way in light of contemporary community standards in Boise, Idaho; and 3) taken as a whole, they lack serious literary, artistic, political, or scientific value.

## IV.   SENTENCING FACTORS

   **A.   Penalties.**   A violation of 18 U.S.C. Section 1470, as charged in Counts One and Two of the Information, is punishable by a term of imprisonment of not more than 10 years, a term of supervised release of 3 years, a maximum fine of $250,000, and a special assessment of $100 at each count.

   **B.   Supervised Release.**   The Court must impose a period of supervised release. No agreement exists as to the length of supervised release.

   The law permits the combined prison time and term of supervised release to exceed the maximum term of incarceration for the crimes to which the defendant is pleading guilty. Violation of any condition of supervised release may result in further penalties and/or prosecution.

   **C.   Fines and Costs.**   The Court may impose a fine.   No agreement exists as to the amount of the fine.   The Court may also order the defendant to pay the costs of imprisonment, probation, and supervised release.

   **D.   Special Assessment.**   The defendant will pay the special assessments before sentencing and will furnish a receipt at sentencing.   Payment will be made to the United States District Court, Clerk's Office, Federal Building and United States Courthouse, 550 West Fort Street, Fourth Floor, Boise, Idaho 83724.

   **E.   Restitution.**   In addition to any fine or costs imposed, the defendant agrees to pay restitution equal to the loss caused to any victim of the charged offenses pursuant to any applicable statute.

**F.     Forfeiture.**   The defendant understands that the Court will, upon acceptance of the defendant's guilty pleas, enter a forfeiture order as part of the defendant's sentence, and that the forfeiture order may include assets directly traceable to the offense, assets used in the commission of the offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.   The defendant agrees to immediately forfeit to the United States the property set out in the Forfeiture Allegation of the Information.

The defendant agrees that the forfeitures herein are separate from all other penalties, including monetary ones.   The defendant agrees to consent to any abandonment proceeding as to forfeitable property herein, and to the entry of orders of forfeiture for such property, including civil administrative forfeiture, civil judicial forfeiture, or criminal forfeiture which may be brought against the property, and agrees to waive the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.   If this Agreement is withdrawn for any reason, the defendant waives the right to contest all civil and administrative forfeitures which began before the withdrawal.

The defendant agrees to assist fully in the forfeiture of the foregoing assets.   The defendant agrees to complete a personal financial statement and to disclose all of the defendant's assets and sources of income to the Government, including all assets over which the defendant exercises or exercised direct or indirect control, or in which the defendant has had any financial interest, and to cooperate in obtaining any records relating to ownership of such assets when sought by the Government, and to take all steps necessary to pass clear title to the forfeited assets

**Plea Agreement**                                    10

to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture.   The defendant further agrees that the defendant will not assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding or related civil forfeiture case, and that the defendant will testify truthfully in any such proceeding.

The defendant is the sole owner of the properties and property interests listed above, except as specifically set out herein.   If the defendant is not the sole owner of these properties and interests, representations are false or inaccurate, the Government may pursue any and all forfeiture remedies available at law or equity based on the violations covered by this Agreement.

The defendant agrees to waive all constitutional, legal and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.   The defendant also agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with regard to such challenge or review or with regard to the filing of a petition for remission of forfeiture.

The defendant agrees that the forfeiture provisions of this Plea Agreement will survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this Agreement.   The forfeitability of any particular property pursuant to this Agreement shall be determined as if defendant had survived, and that determination shall be binding upon the defendant's heirs, successors and assigns until the agreed forfeiture, including

any agreed money judgment amount, is collected in full.    If the crime(s) involved victims, then
the defendant acknowledges and agrees that this Agreement to disgorge the defendant's
wrongfully obtained criminal proceeds for the benefit of the defendant's victims is remedial in
nature, and therefore that the defendant intends for the disgorgement to be completed regardless
of any possible future abatement of defendant's criminal conviction.    The United States District
Court for the District of Idaho shall retain jurisdiction to settle any disputes arising from
application of the foregoing forfeiture provisions.

     **G.**    **Release or Detention Pending Sentence**.    Pursuant to 18 U.S.C. § 3143(a)(1)
and (2), the defendant acknowledges that he will be detained upon conviction unless:    (A)(i) the
Court finds there is a substantial likelihood that a motion for acquittal or new trial will be granted
or (ii) this agreement provides that the United States will recommend that no sentence of
imprisonment be imposed and (B) the Court finds, by clear and convincing evidence, that he is
not likely to flee or pose a danger to any other person or the community.    Then, if exceptional
circumstances exist, the defendant may be released upon conditions.

    In the event the Rule 11 hearing is held before a U.S. Magistrate Judge, in exchange for
the benefits conveyed by this plea agreement, defendant expressly waives the right to argue that
he has not been "found guilty" for purposes of Title 18 U.S.C. § 3143.    *See, e.g., United States v.
Yanni*, 2010 WL 3522271 (D.Ariz. 2010).

**V.**    **UNITED STATES SENTENCING GUIDELINES**

     **A.**    **Application of Sentencing Guidelines.**

    The Court must consider the United States Sentencing Guidelines (USSG) in determining
an appropriate sentence under 18 U.S.C. § 3553.    The defendant agrees that the Court may
consider "relevant conduct" in determining a sentence pursuant to USSG § 1B1.3.

The Court is not a party to the Plea Agreement.   The Plea Agreement does not bind the Court's determination of Sentencing Guidelines range.   The Court will identify the factors that will determine the sentencing range under the Sentencing Guidelines.   While the Court may take the defendant's cooperation, if any, and the recommendations of the parties into account, the Court has complete discretion to impose any lawful sentence, including the maximum sentence possible.

Recognizing that the Court is not bound by this Agreement, the parties agree to the recommendations and requests set forth below

**B.**     **Sentencing Guidelines Recommendations and Requests**

1.     **Acceptance of Responsibility.**   If the defendant clearly accepts responsibility for the offense, the defendant will be entitled to a reduction of two levels in the combined adjusted offense level, under USSG § 3E1.1(a).   The Government will move for an additional one-level reduction in the combined offense level under § 3E1.1(b) if the following conditions are met: (1) the defendant qualifies for a decrease under § 3E1.1(a); (2) the offense is level 16 or greater; and (3) the defendant has timely notified authorities of the defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.   If, before sentence is imposed, the defendant fails to meet the criteria set out in USSG § 3E1.1, or acts in a manner inconsistent with acceptance of responsibility, the Government will withdraw or not make such a recommendation.

2.   **Joint Recommendations.**   The parties jointly make the following recommendations, and agree that the following shall be included as terms of the defendant's sentence, expressly bargained for as a part of this plea agreement:

a)     **Psycho-Sexual Assessment** --The defendant will submit to a sex offender

evaluation pursuant to Title 18, United States Code, Section 3552(b) prior to sentencing in this case. It is the defendant's obligation to secure this evaluation from a mental health professional who is a member of the Association for Treatment of Sexual Abusers (ATSA).   The evaluation shall follow the format for psychosexual evaluations set forth by the Idaho Sex Offender Classification Board (see, http://www2.state.id.us/socb/) and the Practice Standards and Guidelines for Members of ATSA.   The defendant agrees to submit to all evaluation procedures at the direction of the treatment provider, including phallometry and polygraph testing if the treatment provider deems them necessary.

      b)        **Waiver of Confidentiality** -- The defendant agrees to waive any right to confidentiality and allow the provider conducting the psychosexual evaluation (and any subsequent treatment) to supply a written report(s) to the United States Probation Department, the Court and the United States Attorney.

      c)        **Contact with Minors** -- The Defendant may not knowingly have direct or indirect contact with children under the age of eighteen, unless approved in advance, in writing, by his probation officer.

      d)        **Access to Minors** -- The Defendant will not reside or loiter within 300 feet of schoolyards, playgrounds, arcades or other places, establishments and areas primarily frequented by children under the age of eighteen.

      e)        **Occupational Restriction** – The defendant may not engage in any paid occupation or volunteer service that exposes him either directly or indirectly to minors, unless approved in advance, in writing, by his probation officer.

      f)        **Restriction on Computer/Internet Use** -- The Defendant may not possess or use a computer or other electronic device connected to the Internet without the prior permission,

**Plea Agreement**               14               Rev. May 2015 (General)

in writing, from his probation officer.

g)     **Possession of Sexually Explicit Matter Involving Minors** -- The Defendant will not possess any child pornography or obscenity, or sexually explicit visual or text (written) material involving minors.

h)     **Polygraph Testing** -- The Defendant agrees to participate in polygraph testing to monitor his compliance with supervised release and treatment conditions, at the direction of his probation officer and/or treatment staff.

i)     **Post-Incarceration Treatment** -- The Defendant will successfully complete any course of treatment related to his offense, as directed by his probation officer, including but not limited to cognitive/behavioral treatment for sexual deviancy under the direction of a qualified mental health professional who is experienced in treating and managing sexual offenders, such as a member of the Association for the Treatment of Sexual Abusers (ATSA).   The defendant will follow the rules of the treatment program as if they are the orders of the Court.

j)     **Search Provision** -- The Defendant will be subject to a search of his person, home or vehicle, and any objects or materials (including computers and other types of electronic storage media) found therein, at the discretion of his probation officer.

k)     **Sex Offender Registration/Megan's Law/Adam Walsh Act Provision** -- The defendant has been advised, understands and agrees that under the Sex Offender Registration and Notification Act, a federal law, the defendant must register and keep the registration current in each of the following jurisdictions: the location of the defendant's residence, the location of the defendant's employment; and, if the defendant is a student, the location of the defendant's school. Registration will require that the defendant provide information that includes name, residence address, and the names and addresses of any places at which the defendant is or will be an employee

or a student.   The defendant understands that federal law requires that he must update his

registrations not later than <u>three</u> business days after any change of name, residence, employment, or

student status.   See 42 U.S.C. § 16913(c).   State laws may be more restrictive.

The defendant has been advised and understands that Idaho law requires that such

registration be updated with the sheriff of the county within <u>two</u> working days of coming into any

county to establish permanent or temporary residence, commencement of employment or

enrollment as a student in an educational institution, and provides that nonresidents employed in

counseling, coaching, teaching, supervising or working with minors in any way, regardless of the

period of employment, must register prior to the commencement of such employment with the

sheriff of the county.   See I.C. 18-8307 (4)(a)(b).   The defendant understands that failure to

comply with these obligations subjects the defendant to prosecution for failure to register under

federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both, and may also

subject the defendant to prosecution under state failure to register laws.

l)      **Conditional Use/Derivative Use Immunity** - As a condition of

court-mandated evaluation and treatment, the defendant will be required truthfully to reveal his

entire sexual history, including the possibility of other sexual crimes.   In recognition of the fact

that full disclosure of that history is a necessary component of effective treatment, the government

agrees that the defendant's admissions during psycho-sexual evaluation and sex offender treatment,

to sexual crimes (*excluding homicide*) previously undisclosed to any law enforcement entity, will

not be used against the defendant in a new criminal prosecution.   *See United States v. Antelope,*

395 F.3d 1128 (9th Cir. 2005), and *Kastigar v. United States*, 406 U.S. 441 (1972).   However, the

parties agree that this use immunity and derivative use immunity, is expressly conditioned, upon: 1)

the defendant successfully completing sexual deviancy treatment, and 2) the defendant not

materially violating the rules of supervised release, and/or committing a sexual crime or a crime

involving the sexual exploitation of children after the date of this agreement.   If the defendant fails

to complete all aspects of treatment, or fails to comply with all material supervised release

requirements, or reoffends as described above, then this immunity agreement is rescinded and the

government may use defendant's statements against him.

      2.    **Stipulation Regarding Sentencing Guidelines.**   The defendant

understands that the United States Sentencing Guidelines apply in an advisory manner and are not

binding on the Court.   The parties agree that USSG §§ 2G3.1(c)(1) and   2G2.2(a)(2) apply in this

case, and that Specific Offense Characteristics 2G2.2(b)(1), (b)(5), (b)(6), and (b)(7)(C) apply.   In

exchange for the concessions made by the government, including its agreement not to charge the

defendant with other crimes supported by the facts, particularly production of child pornography,

and enticement of a minor to engage in any sexual activity for which any person can be charged

with a criminal offense, the defendant agrees to join the Government in recommending a sentence

of incarceration of 84 months.

## VI.    WAIVER OF RIGHT TO DIRECT APPEAL AND TO COLLATERAL ATTACK UNDER 28 U.S.C. § 2255

    A.    In exchange for this Agreement, and except as provided in subparagraph B, the

defendant waives any right to appeal or collaterally attack the entry of plea, the conviction, the entry

of judgment, and the sentence.

    The defendant acknowledges that this waiver shall result in the dismissal of any direct

appeal or collateral attack the defendant might file seeking to challenge the plea, conviction or

sentence in this case.   Further, the filing of such an appeal or collateral attack will breach this

Agreement and will allow the Government to withdraw from the Agreement and take other remedial action.

If the defendant believes the Government has not fulfilled its obligations under this Agreement, the defendant will object at the time of sentencing; further objections are waived.

B.   Exceptions:

1.   **Direct Appeal:** Notwithstanding subparagraph A, the defendant shall retain the right to file one direct appeal if one of the following unusual circumstances occurs:

a.   the sentence imposed by the District Court exceeds the statutory maximum;

b.   the District Court arrived at an advisory Sentencing Guidelines range by applying an upward departure under Chapter 5K of the Guidelines; or

c.   the District Court exercised its discretion under 18 U.S.C. § 3553(a) to impose a sentence that exceeds the advisory Sentencing Guidelines range as determined by the District Court.

The defendant understands that the above circumstances occur rarely and that in most cases this Agreement constitutes a complete waiver of all appellate rights.

2.   **Motion Under 28 U.S.C. § 2255:**   Notwithstanding subparagraph A, the defendant shall retain the right to file a 28 U.S.C. § 2255 motion alleging ineffective assistance of counsel.

## VII.   PROVIDING INFORMATION FOR THE PRESENTENCE REPORT

The defendant agrees to provide material financial and other information requested by a representative of the United States Probation Office for use in preparing a presentence report. Failure to execute releases and provide information for the presentence report violates this

Agreement and relieves the Government of its obligations in this Agreement.   Such failure and response by the Government will not, however, constitute grounds for withdrawing the plea of guilty unless the Government so requests.   Providing materially false information will subject the defendant to additional penalties, including an enhancement under USSG §3C1.1.

## VIII.   NO RIGHT TO WITHDRAW PLEA

The defendant understands that the Court may not follow the recommendations or requests made by the parties at the time of sentencing.   The defendant cannot withdraw from this Plea Agreement or the guilty plea, regardless of the Court's actions.

## IX.   CONSEQUENCES OF VIOLATING AGREEMENT

**A.** **Government's Options.**   If the defendant fails to keep any promise in this Agreement or commits a new crime, the Government is relieved of any obligation to do the following: 1) make a sentencing recommendation consistent with the terms promised in this Agreement; and 2) not to prosecute the defendant on other charges, including charges not pursued due to this Plea Agreement.   Such charges may be brought without prior notice.   In addition, if the Government determines after sentence is imposed that the defendant's breach of the Agreement warrants further prosecution, the Government may choose between letting the convictions under this Agreement stand or vacating such convictions so that such charges may be re-prosecuted.   If the Government determines that a breach warrants prosecution before sentencing, it may withdraw from the Plea Agreement in its entirety.

The Government's election to pursue any of the above options cannot be a basis for the defendant to withdraw the guilty pleas made pursuant to this Agreement.

**B.** **Defendant's Waiver of Rights.**   If the defendant fails to keep any promise made in this Agreement, the defendant gives up the right not to be placed twice in jeopardy for the

offenses to which the defendant entered a plea of guilty or which were dismissed under this Agreement.   In addition, for any charge that is brought as a result of the defendant's failure to keep this Agreement, the defendant gives up: (1) any right under the Constitution and laws of the United States to be charged or tried in a more speedy manner; and (2) the right to be charged within the applicable statute of limitations period if the statute of limitations expired after the defendant entered into this Agreement.

## X.    MISCELLANEOUS

A.    **No Other Terms**.   This Agreement is the complete understanding between the parties, and no other promises have been made by the Government to the defendant or to the attorney for the defendant.   This Agreement does not prevent any governmental agency from pursuing civil or administrative actions against the defendant or any property.   Unless an exception to this paragraph is explicitly set forth elsewhere in this document, this Agreement does not bind or obligate governmental entities other than the United States Attorney's Office for the District of Idaho.

B.    **Plea Agreement Acceptance Deadline.**   This plea offer is explicitly conditioned on the defendant's notification of acceptance of this Plea Agreement no later than 5:00 p.m. on June 19, 2015.

## XI.    UNITED STATES' APPROVAL

I have reviewed this matter and the Plea Agreement.   This Agreement constitutes a formal plea offer from the Government.   Any oral discussions with the defendant and defense counsel about a plea do not constitute a plea offer.   Any written offer or Agreement made prior to this Agreement is no longer a valid offer by the Government and is rescinded.   I agree on behalf of the United States that the terms and conditions set forth above are appropriate and are in

the best interests of justice.

WENDY J. OLSON
UNITED STATES ATTORNEY
By:

_____          _6·23·15_____
JUSTIN D. WHATCOTT                        Date
Assistant United States Attorney

## XII.   ACCEPTANCE BY DEFENDANT AND COUNSEL

I have read and carefully reviewed every part of this Plea Agreement with my attorney.    I understand the Agreement and its effect upon my potential sentence.    Furthermore, I have discussed all of my rights with my attorney and I understand those rights.    No other promises or inducements have been made to me, directly or indirectly, by any agent of the Government, including any Assistant United States Attorney, concerning the plea to be entered in this case.    I understand that this Agreement constitutes a formal plea offer from the Government.    Any oral discussions by me or my counsel with the Government about a plea do not constitute a plea offer. Any written offer or Agreement made prior to this Agreement is no longer a valid offer by the Government and is rescinded.    In addition, no one has threatened or coerced me to do, or to refrain from doing, anything in connection with this case, including to enter a guilty plea.    I am satisfied with my attorney's advice and representation in this case.

_____          _6/18/2015_____
Kenton Lloyd Flook                        Date
Defendant

I have read this Plea Agreement and have discussed the contents of the Agreement with my client.    The Plea Agreement accurately sets forth the entirety of the Agreement.    I have conveyed all written offers from the Government to the defendant pursuant to *Missouri v. Frye*,

**Plea Agreement**                        21                        Rev. May 2015 (General)

2012 WL 932020 (U.S. March 21, 2012).    I understand that this Agreement constitutes a formal plea offer from the Government.    Any oral discussions by me or my client with the Government about a plea do not constitute a plea offer.    Any written offer or Agreement made prior to this Agreement is no longer a valid offer by the Government and is rescinded.    I concur in my client's decision to plead guilty as set forth above.

_____
Jeffrey McKinnie
Attorney for the Defendant

Date  6/18/15
_____