MCKINNIE LAW OFFICE
Jeffrey McKinnie, ISB: 7020
P.O. Box 9469
Boise, ID 83707
Ph: 208-429-0088
Fax: 208-342-4657

Attorney For Defendant

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>                Plaintiff,<br><br>vs.<br><br>KENTON FLOOK<br><br>                Defendant. | Case No. 1:15CR---166-001<br><br>DEFNDANT'S SENTENCING MEMORANDUM |

COMES NOW, the Defendant, KENTON FLOOK, by and through his attorney of record, Jeffrey McKinnie of McKinnie Law Office, and respectfully submitting this Memorandum in this case, pursuant to 18 U.S.C. §3553(a).

**RECOMMENDATIONS/REQUESTS FOR SELF-SURRENDER**

The Defendant is requesting that this Court consider the following when imposing a sentence:

1. The Rule 11 Plea Agreement and;
2. The facts of the case and;
3. The Sentencing Guidelines;

This Court should also consider the psycho-sexual evaluation, the pre-sentence treatment, the Defendant's employment history, and his character in the community.

DEFENDANT'S SENTENCING MEMORANDUM    1

In the event this court imposes an immediate prison sentence, the Defendant is requesting that he be allowed to "self-surrender" on January 8, 2016 at a place and time designated by the Bureau of Prisons.

Federal Statute *18 U.S.C. § 3143*, in relevant part, states:

> (a)Release or Detention Pending Sentence.—
> (1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, other than a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. 994 does not recommend a term of imprisonment, be detained, unless the judicial officer ***finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community*** if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c).

*18 U.S.C. § 3143*. [Emphasis Added].

The Defendant's request to "self-surrender" is predicated on his employment and his prison security-level classification.

As noted in the Presentence Report, the Defendant has worked as a salesman for Serta Mattress since 2006, nearly ten years. In fact, Mr. Flook is one of the company's top salespersons, earning approximately six-figures annually. **See attached Exhibits (1-7).** Based upon information and/or belief, company executives have recently become aware of the pending sentencing date and the potential consequences for Mr. Flook. The company would benefit greatly if Mr. Flook would be allowed to train his eventual replacement. The training process, including the introduction to the current vendors, would take approximately 30-60 days. This would also benefit the Defendant, if he would be allowed to surrender on January 8, 2016. More specifically, at the completion of any imposed prison sentence, the Defendant would certainly like to re-apply with the company.

As an added note, if this court allowed Mr. Flook to voluntarily surrender to a designated facility on January 8, 2016, his prison security level would possibly be decreased by 3 points.[1] This would provide an additional benefit to the Defendant.

Keep in mind, the Defendant has complied with all of the current release conditions and he has not demonstrated that he is a flight-risk.

### RULE 11 PLEA AGREEMENT AND STIPULATIONS IN EXCHANGE FOR GOVERNMENT CONCESSIONS

Under the terms of the plea agreement, the parties acknowledged that the United States Sentencing Guidelines apply in an advisory manner and are not binding on this Court. That said, both parties have agreed to jointly recommend a sentence of 84 months. And even though §2G3.1 is the applicable guideline, the Defendant stipulated to the application of USSG §§ 2G3.1(c)(1), 2G2.2(a)(2) 2G2.2(b)(1), 2G2.2(b)(5), (b)(6), and b(7)(C). The "stipulation" was based upon the Government making a concession not to charge the Defendant under a different statute.

### PERTINENT FACTS

According to the investigative reports, the Defendant and the victim started engaging in communication on the Internet on January 21, 2014. The last contact between the Defendant and the victim was March 7, 2014, the report noted.[2] That's a total of <u>47 days</u>. In fact, the victim reported that the week after February 14 (Valentine's Day) was the first time the communication became sexually explicit.[3] Despite the parties' stipulation that at least 300 images were exchanged, the Defendant would like for

---

[1] www.bop.gov/policy/progrstat/5100_008 and "Securing a Favorable Prison Placement," by Alan Ellis, attorney at Law, National Association of Criminal Defense Lawyers: The Champion July 2015.
[2] *See page 4 of the Rule 11 agreement;*
[3] *See page 4 of the Rule 11 agreement;*

DEFENDANT'S SENTENCING MEMORANDUM          3

this Court to understand that the criminal conduct at issue lasted no more than two weeks (14 days). *See also U.S. v. Raby* 2009 WL 5173964 (unpub.) (S.D. W.Va. Dec. 30, 2009) (where def. possessed pornography and guidelines 210-240 months, variance to 120 months with lifetime supervised release proper in part because "**the sentences recommended by section 2G2.2 are simply too long… I do not give them the same weight that I accord other Guidelines**. **In particular, I disagree with section 2G2.2(b)(7), which dramatically enhances an offender's sentence based solely on the number of images that he received**."). [Emphasis Added].

And notwithstanding the "parties' stipulation that the Government made concessions in lieu of this plea agreement, this Court should not ignore the short duration of the criminal conduct at issue.

Finally, while we appreciate the Government's decision not to pursue charges under a different statute, it is important to note that the actual base level offense that the Defendant is being prosecuted for is 10. *See §2G3.1*. However, in exchange for the Government concession, the Defendant agreed that 2G2.2(a)(2) would also apply, thereby increasing the base level offense to 22, a twelve-point jump. *See §2G2.2(a)(2)*.

## LAW

Sentencing in federal cases changed dramatically when the United States Supreme Court handed down its decision in *U.S. v. Booker*, 125 S.Ct. 738 (2005). The Court expressly invalidated, or "excised", 18 U.S.C. §3553(b) from the Sentencing Reform Act of 1984. In *Booker*, the Supreme Court held that the mandatory nature of the Sentencing Guidelines rendered them incompatible with the Sixth Amendment's guarantee of a right to a jury trial. The resulting effect is that the United States Sentencing Guidelines are no

longer mandatory. Rather, the Guidelines are now advisory only. A sentencing court is required "to consider Guidelines ranges", but may "tailor the sentence in light of other statutory concerns as well." *Booker*, 125 S.Ct. at 717.

Prior to the *Booker* decision, the mandatory sentencing guidelines essentially controlled sentencing decisions and narrowed the discretion of the Court. As such, the sentencing factors set forth in 18 U.S.C. §3553(a) essentially took a backseat to the guidelines range. After *Booker*, the §3553(a) factors, which wholly survived the *Booker* holding, provide the remaining statutory guidance for fashioning an appropriate sentence.

Congress has identified four "purposes" of sentencing: punishment, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a)(2). To achieve these ends, § 3553(a) requires sentencing courts to consider not only the advisory Guidelines range, but also the facts of the specific case through the lens of the seven factors listed in § 3553(a)(1)-(7). The factors listed in § 3553(a)(2) also give the sentencing court guidance as to the general purposes that should be achieved by a sentence:

> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

The Supreme Court furthered the *Booker* holding that the Sentencing Guidelines are only advisory in *Gall v. U.S.*, 128 S. Ct. 586 (2007). In *Gall*, the Court instructed that the sentencing court should first calculate the applicable Guidelines range. *Id*. at 596.

DEFENDANT'S SENTENCING MEMORANDUM          5

After calculating the Guidelines range, the sentencing court must give both the government and the defendant "**an opportunity to argue for whatever sentence they deem appropriat**e." *Id*. at 596.  The sentencing court should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by either party. *Id*. at 596.  The sentencing court should "not presume the Guidelines range is reasonable." *Id* at 597.  In the event the sentencing court decides to impose a sentence outside of the recommended Guidelines range, the sentencing court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id*. at 597.

In light of the Supreme Court's decisions in *Booker* and *Gall*, and the resulting effect on the now-advisory Sentencing Guidelines, the Defendant asserts that the information contained in this Memorandum will assist the Court in fashioning an appropriate sentence in this case.

### CHARACTER LETTERS

The Defendant is requesting that this Court consider the submitted character letters. ***See Attached Exhibits (8-14)***. Here is why:

As stated above, the Court in *Booker* held that a defendant's character is a factor to consider in sentencing. *See Also 18 U.S.C. § 3553(a)*.

The Defendant is before this Court for committing an egregious offense, but his family and friends unanimously find him to be an honorable person. That said, we concede that the Defendant has not lived a mistake-free life, and he is before this court ready to accept responsibility for his actions. More importantly, he is prepared to learn from his mistake. And as American pioneer once noted: "Life is a series of experiences,

DEFENDANT'S SENTENCING MEMORANDUM          6

each one of which makes us bigger, even though sometimes it is hard to realize this. For the world was built to develop character, and we must learn that the setbacks and grieves which we endure help us in our marching onward." Henry Ford, inventor.

### PSYCHO-SEXUAL EVALUATION AND PRE-SENTENCE TREATMENT

The Defendant has undergone a psycho-sexual evaluation. *See previously submitted evaluation*. According to the report, Mr. Flook is a "moderate risk" to re-offend. "There are protective factors to be considered in treatment that would contribute to diminishing his risk for re-offense," the author of the report noted. "Protective factors may include Mr. Flook's work ethic and behavior, leisure activities, financial management, motivation for treatment, attitudes toward authority, and life goals," according to the report.

And almost since the inception of this investigation, Mr. Flook has been participating in treatment. **See attached Exhibit (15-16)**. Why is this important?

Courts have factored in rehabilitation and pre-sentence treatment into the sentencing decisions.  *See United States v. Core*, 125 F.3d 74, 74-75 (2d Cir.1997)(Power to depart may be based upon significant pre-sentence rehabilitation and the probability of continuing steps toward permanent good behavior); *United States v. Williams*, 65 F.3d 301, 306 (2d Cir.1995) (affirming facilitation of rehabilitation as basis for downward departure) and *U.S. v. Wachowiak*  412 F.Supp.2d 958  (E.D. Wisc. 2006) *aff'd* 496 F.3d 744 (7th Cir. 2007)  (where 24 year old music student convicted of possessing child pornography,  and guidelines 121-151 months,  and where he is in treatment and low risk of recidivism, and strong support from family, court imposes 70 months in part because  "the guidelines failed to consider defendant's otherwise

outstanding character, as depicted in the many supportive letters... while § 3553(a)(1) requires the court to consider the character of the defendant, the guidelines account only for criminal history).

### THE DEFENDANT'S FAMILY

In the Defendant's Factual Corrections and Notification of Objections, the Defendant wanted this Court to know that his family *is* dependent on his salary. *See previously filed Defendant's Factual Corrections and Notification of Objections*. Courts can factor-in a defendant's existing family condition at sentencing. *See United States v. Galante*, 111 F.3d 1029 (2d Cir.1997)(departure is also allowed based upon extraordinary family circumstances); *United States v. Johnson*, 964 F.2d 124 (2d Cir.1992). And even though the Guidelines themselves generally discourage departure based upon family ties and responsibilities. *See U.S.S.G. § 5H1.10* policy statement, where "the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present," departure is authorized. *Koon v. United States*, 518 U.S. 81, 97 (1996). **See attached Exhibit family photos (17-18)**.

### EMPLOYMENT

According to his employer, Mr. Flook is a good and valued employee. **See attached Exhibit 1**. Again, this a factor this Court can consider. *See U.S. v. Menyweather*, 447 F.3d 625, 634 (9th Cir. 2006) (9th Cir. 2006)("In the 'broader appraisal,' available to district courts after *Booker,* courts can now ⋯ have the discretion to weigh a multitude of mitigating and aggravating factors that existed at the time of mandatory Guidelines sentencing, but were deemed 'not ordinarily relevant,' such as age, education and

vocational skills, mental and emotional conditions, ***employment record***, and family ties and responsibilities.")

Based upon the foregoing, Mr. Flook respectfully requests that this Court consider this memorandum when fashioning a sentence.

Respectfully submitted this October 19, 2015.

                                                    /s/
                                        Jeffrey
                                        Attorney for the Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the October 19, 2015, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

    United States Attorney
    Washington Group, Plaza IV
    800 Park Blvd., Suite 600
    Boise, Idaho 83712
    Fax:  334-1413

                                  By:      /s/
                                                 Jeffrey McKinnie